UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STERLING SAVINGS BANK, a Washington state chartered bank,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant. | No. CV-12-368-LRS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6). (ECF No. 29). The Court heard oral argument on September 6, 2012. This order is intended to memorialize and supplement the oral ruling of the court that was delivered on September 6, 2012.

**1. Background**

Defendant Federal Insurance Company ("Federal") moves to dismiss Plaintiff Sterling Savings Bank's ("Sterling") action for Breach of Contract, Bad Faith, Unreasonable Denial of a Claim, and Violation of

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS-  1**

the Consumer Protection Act (RCW 19.86) for failure to state a claim upon which relief can be granted.

Sterling's suit is based on Federal's denial of a tendered claim made on a liability insurance policy ("Policy") issued by Federal, with a coverage period of June 15, 2009 to September 28, 2010. (ECF No. 1). The Insuring Clause of the policy states that Federal will pay "loss on account of any claim first made against such insured," for professional services and contains an additional endorsement that Sterling purchased to cover "lending liability." (ECF No. 1).

Between November 6, 2007 and November 6, 2008, Sterling made a series of four loans to Poleline Self-Storage ("Poleline") totaling $1,944,500 ("Loans"). Poleline failed to repay the outstanding principle and accrued interest when it came due on June 1, 2009. Sterling then filed a Complaint to collect on the Loans and foreclose on the collateral. Poleline filed a counterclaim ("Original Counterclaim") on April 12, 2010 alleging that Sterling failed to, per agreement, apply proceeds from the final loan issued toward Poleline's previously outstanding obligations. Though it is disputed whether the Original Counterclaim contained a demand for money damages, none were sought in the prayer for relief, and Sterling did not consider it a damages claim but rather a claim for specific performance.

On August 20, 2010, Poleline filed an Amended Counterclaim asserting (1) Breach of Contract, (2) Promissory Estoppel, (3) Negligent Misrepresentation, and (4) Breach of the Implied Covenant of

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS- 2**

good Faith and Fair Dealing.  In the Amended Counterclaim, Poleline also alleged class action claims asserting that Sterling charged excessive interest using the "365/360" method of computing interest. The Amended Counterclaim undisputedly included claims for monetary damages.  On September 7, 2010, approximately three weeks after Poleline filed the Amended Counterclaim, Sterling reported the claim to Federal.

Section 8 of the Policy outlines the reporting and notice requirements for coverage, and states in relevant part:

> The Insured shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any Claim as soon as practicable, but in no event later than the earliest of the following dates: (1) Sixty (60) days after the date on which any Insured first becomes aware that the Claim has been made...

ECF No. 1 at 31.

Federal refused to accept the tender of defense of the Original Counterclaim[1] because Sterling provided notice of the Original Counterclaim nearly 90 days after being served, an alleged breach of the 60 day notice provision and condition precedent to coverage.

On October 18, 2011, Federal set forth a policy reason for also refusing coverage for the Amended Counterclaim.  In a letter, Federal asserted that the counterclaim and the Amended Counterclaim were

---

[1] Sterling represented at oral argument that it was not seeking coverage for the Original Counterclaim, which it viewed to be for specific performance.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS- 3**

"Related Claims," in that they "arise from, or in consequence of the same or related facts, circumstances, situations, transactions or events" as those claims in the Original Counterclaim. According to Federal, the Original Counterclaim and Amended Counterclaim constitute one "Related Claim" first made on April 12, 2010, initiating the clock on the 60 day Reporting and Notification Period requirements. Federal also asserted several substantive policy exclusions that would preclude coverage, including exemptions for disgorgement, fees or charges, and remuneration.

Sterling contends that the Original and Amended Counterclaims each assert different and unrelated claims because (a) the Original Counterclaim asserted only individual, rather than class claims, (b) the Original Counterclaim did not seek monetary damages whereas the Amended Counterclaim did, and (c) that the Original Counterclaim was based on the failure to apply loan proceeds appropriately while the Amended Counterclaim was based, instead, on an alleged failure to convert one of the loans as well as the alleged assessment of excessive interest under the 365/360 interest computation language.

Sterling also replied that nothing in the Policy provided that the reporting requirements for "Related Claims" relate back to the time of the original "Claim," and that to read the policy to so require was illogical. Sterling argues that, regardless of relatedness, the Original Counterclaim did not qualify as a "Claim" per the policy, and that the only "Claim" began when Poleline filed

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS- 4**

its Amended Counterclaim. This is because the Policy defines a "Claim" as, in part, a written demand for monetary damages.

Sterling argues that the Original Counterclaim only demanded specific performance. Sterling also argued that, under Washington law, an insurer must perform under a policy regardless of the insured's failure to provide timely notice so long as the notice is made within the policy period and there is no "substantial prejudice to the insurer, for which the insurer bears the burden of proof."

On January 3, 2012, Sterling reports it participated in mediation with Poleline, and invited Federal to participate. Federal refused to do so and continued to deny coverage. At the mediation, the parties reached settlement as to the class action claims but not the individual claims of Poleline, agreeing to pay out $3.5 million in exchange for the dismissal of the class action claims.[2] Sterling continues to defend against the individual claims in the Amended Counterclaim.

## 2. Discussion

### A. 12(b)(6) Standard

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In

---

[2] Sterling represents that settlement was a business decision rather than any concession of unlawful actions by Sterling.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS- 5**

reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Cir. 1994); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The complaint must be construed in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The sole issue raised by a 12(b)(6) motion is whether the facts pleaded, if established, would support a claim for relief; therefore, no matter how improbable those facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827 (1989). The court need not, however, accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996).

**B. Sixty Day Mandatory Notice Requirement**

The sixty day reporting and notice requirement in section 8 of the Policy is, in the mind of the Court, ambiguous regarding its application to this case. There is no express provision stating that notice of a related claim is a condition precedent to coverage for subsequent claims, although section 7(a) somewhat touches on the issue. Moreover, Sterling disputes that the claims are in fact related, and argues that the Original and Amended Counterclaims arise

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS-  6**

from different allegations on behalf of Poleline, and different loan transactions altogether with regard to the class action. There is also argument over whether the Original Counterclaim was a "Claim" at all under the terms of the policy, since it did not include a prayer for money damages.  Additionally, this section of the policy requires that an insured provide notice of a claim "sixty (60) days after the date on which any insured first becomes aware that the claim has been made."

   The language of an insurance policy in Washington is interpreted in accordance with the way it would be understood by the ordinary man buying insurance, 'even though a different meaning may have been intended by the insurer.' *Ames v. Baker*, 68 Wash.2d 713, 716-17, 415 P.2d 74, 77 (1966).  The requirement of awareness on the part of the insured injects some level of subjectivity into determining whether a claim has been made, and Sterling repeatedly asserts that the bank did not believe the Original Counterclaim amounted to a "Claim" that would invoke coverage.  It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. *Dairyland Ins. Co. v. Ward*, 83 Wash.2d 353, 517 P.2d 966 (1974).  This rule applies with added force in the case of Exceptions and Limitations to the policy's coverage.  *Id*.  Given the preference for construing the aforementioned ambiguities in favor of the insured, along with the cautious approach toward dismissing claims under Rule

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS-   7**

12(b)(6), the Court finds it would be premature to dismiss Sterling's complaint at this juncture.

### C. Exclusions

Federal also argues certain exclusions would preclude coverage under the express terms of the policy, based on facts of the underlying Idaho litigation (Case No. 12-2-01594-0) and subsequent settlement. These exclusions primarily involve claims arising from Sterling's use of the 360/365 method of calculating interest. Federal first alleges that Sterling's interest overcharge settlement constitutes disgorgement, and thus falls outside the definition of "Loss" as provided in the policy. Second, Federal alleges that the interest overcharge claims are precluded by policy exclusions for "Fees and Charges" and "Rates of Return." Third, Federal contends that Sterling's interest overcharge claims are precluded because they represent "Unlawful Profit" or remuneration.

Sterling responds that Poleline has no standing to seek disgorgement because Poleline had not made substantial payments on its loan obligations, and there was thus no basis for excluding coverage under a disgorgement theory. Regarding fees and rates of return, Sterling alludes to the added endorsement, dated June 15, 2009, that was purchased to extend coverage for professional services provided by an insurer on behalf of a customer "for a fee, commission or other monetary consideration." Regarding the exclusion for unlawful remuneration or rates of return, Sterling argues that section 3Y of

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS-  8**

the Policy (containing the exclusion for guaranteed rates of return) refers to claims brought by the bank's customers for minimum performance or a rate of return that is promised by that bank to the customer, not for rates that the bank is going to collect on its loans.  Sterling further argues that the Policy's coverage for Loan Servicing includes, by express definition in the Policy, the keeping, billing and disbursements of principal and interest.  Lastly, Sterling responds that The Honorable Judge Simpson, who presided over the underlying Idaho litigation, never found Sterling's use of the 365/360 method to be unlawful.

Given the ambiguities in the insurance policy and the unsettled nature of the record, it would be premature to dismiss the case. Accordingly, Federal's motion for dismissal must be denied.

**IT IS HEREBY ORDERED:**

1. The Defendant's Motion to Dismiss Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 29) is **DENIED.**

**IT IS SO ORDERED.**

DATED this 18th day of September, 2012.

*s/Lonny R. Suko*

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS- 9**